2280 Intellectual Ventures I LLC against Lenovo Group Ltd. Mr. Liddell. Thank you, Your Honor. Good morning, and may it please the court. The district court's ruling in this case was a summary judgment ruling, but the issues presented in this appeal are claim construction issues for this court to address. Specifically, we contend that the district court erred in creating extraneous claim limitations that were not supported by the patent's intrinsic record, and that those claim construction rulings were undisputedly the basis for the district court's summary judgment ruling. I'd particularly like to focus on two primary construction issues today, each of which we submit provides an independent basis on which to reverse the district court's judgment. The first of those regards the claim language in both of the independent claims at issue, detecting a storage device within the storage drive. The district court's construction essentially simply added a word and a negative limitation to this to require that language to be detecting a removable storage device within the storage drive. That construction was erroneous. Obviously, as a starting point, a construction that mirrors the words of the claim but merely adds additional words of limitation is always going to be presumptively problematic. The district court recognized and acknowledged that its construction here was not based on the ordinary meaning of the language. The district court explicitly stated it was finding a disclaimer as the basis for its construction. A disclaimer, it asserted, was found in the specification. We respectfully submit that the district court misread both this court's precedent and the specification in reaching that conclusion that the specification not only did not support such a limitation but, if anything, directly contradicted it, and that the district court failed to read both the specification in its entirety and in context and also to credit a variety of claims which further clarified that the limitation the district court added was definitely not what was intended and not a disclaimer the patentee was offering. This court's precedents have been very clear in many different cases. Avid Tech, Libel, Flarsheim, and many others, Primatech, that finding a disclaimer requires very explicit, clear, and unmistakable words of exclusion in the specification. The district court didn't find those. It essentially found that certain embodiments in the patent, and indeed the preferred embodiment, talked about the use of a removable storage device, but in making those findings it discounted or failed to acknowledge other passages in the specification and essentially added this limitation that was not at all warranted. Just to give a couple of examples, there were passages in the specification that described embodiments different from that involving what the district court described as using a storage device, essentially a removable storage device, excuse me, as essentially an access card. One of those examples was in column four. Starting about line 46, there was a discussion of various possible embodiments. One of those embodiments was when a removable storage device was inserted into a drive in the computer that the computer would perform operations of sensing security information. But the passage at the end of that paragraph around line 61, 60 to 61 rather, explains that in another embodiment the storage manager would perform this method of sensing security information on a storage device when it was requested by a user as opposed to, for example, when a removable device was inserted. So clearly talking about other ways that this could be practiced. Isn't that distinction just whether the computer does it automatically or waits for a request, not the distinction between a removable and non-removable storage device? That's what I took that distinction to be. It had nothing to do with any non-removable device, just whether the computer launches it automatically or waits to be asked. I think that it's certainly discussing whether it launches it automatically or waits to be asked, Your Honor. However, if you're talking about using, for example, an access card concept, which the district court credited as essentially the only way to practice the invention or a necessary part of the invention, it would have to be automatic for that to function. Otherwise, the notion of having the user request it wouldn't make a whole lot of sense. But there's another passage that sort of further confirms this. If we go to the end of column six and the beginning of column seven, there's a description of yet another embodiment where security information is sensed not only from a removable device, but explicitly from the, in this instance, non-removable hard disk, 120, and that that then can be used, that security information sensed from a non-removable disk can be part of what's used to encrypt information that's stored both on the hard disk and on any removable disks. This starts at column six around line 63 and then carries over to the first few lines of column seven at appendix 254 to 255. So clearly the patent is teaching that the hard disk can have security information that's sensed and that's used in encrypting exactly what the claims describe. So there's indeed an embodiment, a disclosed preferred embodiment, that does exactly what the district court found the patent excludes. Clearly we think that heavily informs whether that restrictive construction was appropriate. And then, of course, there are multiple dependent claims that we submit further confirm and that need to be read as part of the context of the whole specification and understanding whether there was a disclaimer. There are multiple dependent claims that add the removable storage device limitation, not as that's what a storage device is in the patent, but rather that is a subspecies in a dependent claim. We pointed out claims 28 and 29, claims 46 and 47, all bring these aspects in in ways that the district court respectfully misapplied. I think, as we pointed out in particular in the gray brief, the district court focused on the fact that one of those dependent claims, 28, used the word storage medium as opposed to storage device as the removable item and suggested that that was... Mr. Liddell, this is Judge Chen. Yes. As I understand the doctrine of claim differentiation, it's not the end-all, be-all. It can be a useful and important tool, but we don't let it be the tail that wags the dog if the dog is crystal clear as to the meaning of a claim term, in a sense. And so in this particular instance, if we were to conclude that the specification is very clear in many different ways that the invention is about a removable storage device, given that the problem to be solved is about removable storage devices that can copy sensitive data and then walk away with that data by an unauthorized person, as well as several references in the patent to the invention or the present invention about allowing the copying of data only when the computer senses that the removable storage device is a secure one, and then finally the very consistent references throughout the patent about a removable storage device and the interchangeable usage of storage device 151 and removable storage device 151, it altogether arguably paints a very clear picture that what we're talking about here in this claim is a removable storage device. And if that's the case, then claim differentiation doesn't control. Well, Your Honor, I think two comments. First, we obviously disagree that the specification outside the claims is somehow crystal clear in this manner. I would submit that there are discussions certainly of a preferred embodiment, but that none of those discussions rise to the high level that this court routinely requires to find an actual disclaimer. And I also believe that while it's true, claim differentiation is not a be-all, end-all doctrine, here it's important to look at that claim differentiation to understand the purported disclaimers in the specification. They have to be read together in context. Those aren't completely separate inquiries. Rather, it's important to look at the specification, look at those passages that are suggested to be disclaimer, and ask, are they really intended to be a disclaimer? Is that really what should be conveyed? Especially when that's inconsistent with the way the claims are written in the patent. If the claims are written inconsistently, it's certainly a strong indication that those passages shouldn't be read as disclaimers. If there are other questions on that issue, I'd be happy to address them. Otherwise, I'd like to briefly move to the other issue that is a separate claim construction issue arising from the District Court's summary judgment ruling. Specifically, this was adding a location of encryption element or restriction to each of the independent claims, Claim 15 and 18. I'll focus on Claim 15. The language of the claim recited, encrypting digital data using security information during a right access, and the District Court held that that meant that the encryption had to take place within certain components and not other components. We submit that's clearly erroneous, that nothing in the patent or in the claim suggests that the encryption has to take place in a particular location, that that language recites the timing and the nature of when that occurs in conjunction with a right access, not that it has to be performed by a particular component in these method claims. Do you have written description support in the specification for the claimed storage device itself to do the encryption of the data? And assume for the moment that we're talking about a removable storage device. Sure. The specification does not discuss that specifically as to whether it has to be performed in one location or another. It's true that the written description, every time it talks about encrypting digital data, it's done by something that is not the removable storage device. It's correct that the disclosed embodiments perform in that function. We submit that, one, that that's not an appropriate way to limit the claims, and two, when the patentee wanted to write a claim directed to that format where the encryption took place outside the writing, it wrote the claim differently. Claim 2 is a great example of that. It's a different question than whether there's written description support. Well, Your Honor, there's no finding here that there's a lack of written description support or that this is in any way a written description issue. Your priority date is 1999. Do you know if removable storage devices in 1999 had the capability of encrypting data? I don't know the answer to that question off the top of my head, Your Honor, and there's certainly no evidence in the record to suggest one way or the other. There's also no... A floppy disk couldn't encrypt digital data to itself, could it? Well, Your Honor, I think if we're talking specifically about a 3-1⁄2-inch floppy disk that some of us probably used much earlier than that, that may well be the case. I don't think the patent is in any way limited in that fashion. And additionally, I think to the extent we're talking about written description, Your Honor, we're now well outside the basis for the district court's summary judgment or indeed any assertion or finding that was based in a summary judgment ruling. What about when the patent talks about the invention? It talks about the invention being in some kind of secure full-access mode, and when it's in secure full-access mode, it's the storage management software that encrypts the data. I'm talking about the summary of the invention section as well as the bottom of column 3 as well as the bottom of column 8 carrying over to the top of column 9 where the patent talks about the invention and it consistently talks about the invention having the storage management software using a cryptographic key. You're correct, Your Honor, and it does not really talk about where that storage management software has to function or where the storage management software causes encryption to be performed. It talks about encrypting the data between the computer and the removable storage device, and so it's not part of the removable storage device. Your Honor is correct. We have case law that talks about when the patent itself talks about how it describes the invention, then we understand the claims in light of those definitive statements about what the invention is that are contained in the specification. Well, Your Honor, respectfully, the Court has many cases that make clear that the embodiments that are described in the specification aren't to be imported into the claims. I agree, but do you agree with me that we have other cases that talk about when the specification describes the invention and says, quote-unquote, the invention is or the present invention is, and then it goes on to describe certain features. We understand the claimed invention to have those features. The Court definitely does have cases of that nature. I don't believe that any of this language constitutes such a clear and unmistakable statement limiting the claims in this fashion, particularly where other claims are written expressly to include such limitations, which again counsels against finding that that was the generic meaning of the language. I believe I'm well into my rebuttal time, but...  at the moment from the panel. Can I just ask this question, and I apologize. It's not very well formed. Is it possible, given the patent's concern about somebody coming in, sticking in some sort of removable storage device and walking away with data, it's a security concern. Is that security concern undermined if the walk-away device itself does the encrypting, which might suggest that somebody with access to the walk-away, the removable device after it's been removed, having done the encryption, could then decrypt it? I think, Your Honor, the answer to your question is it depends greatly on how that encryption is performed and whether you could, for example, simply decrypt the information with the device without any associated information required from the computer. That's not how the devices at issue in this case work. Here, the removable hard disks are encrypted, and they're referred to as self-encrypting. However, in these systems, in the accused systems, you still would not be able to simply put it in another computer and read it if you're performing the various methods that the claim contemplates. Okay, thank you. Okay, any more questions at the moment? We'll save the rebuttal time. All right, we'll hear from Mr. Simons. Thank you, Your Honor, and may it please the Court, I'm David Simons, arguing for Lenovo. I'd like to start with the removability issue and specifically talk about the specification, the claim language, including the dependent claims, and then the disavowal language. So as we point out in our brief, the specification only discloses the removable storage devices 151 being used as the secure storage device that triggers access or no access and distinguishes between an authorized and unauthorized user. And it never discloses that the hard disk drive 120 is used for that purpose. The hard disk drive stores the operating system and additional data. Now, Mr. Liddell pointed to two specification passages that he contends disclose potentially the hard disk drive being the secure storage device that triggers access. The first was that passage at column four, line 60 to 62, which says, as one of the questions pointed out, doesn't exactly talk about the hard disk drive. It just has a statement that in another embodiment, the storage manager performs method 200 at the request of a user. Now, it's important to understand here method 200 is talking about figure two. And figure two, and that flowchart in figure two is things that take place after the storage device has already been detected. It's the sensing of the information step and then the access, no access trigger steps. So already by the time you get to this figure two, in method 200, you've already finished a detecting step. So what I think that last sentence is actually getting to is let's say you have a computer system and you come up to it and there's a floppy disk that's already sitting in the drive. And you want to know whether that is an authorized secure disk or not before you try saving data to it and walking away. What that sentence simply says is that in, for example, that circumstance, the software can trigger the access, no access check. You don't have to take the disk out and put it back in. There is nothing in that passage or that paragraph that suggests the hard disk drive 120 can be used as the secure storage device for triggering access. So the second passage that Mr. Liddell mentioned was at the end of column six, beginning of column seven, where it talks about how the hard disk drive can contribute to the encryption key. Again, this has nothing to do with the detecting step. This has to do with generating that encryption key. And the patent talks about how you can use multiple types of information, including manufacturing information, user fingerprint information, user password. So again, the fact that you can pull something off the hard drive to contribute, to generate an encryption key, does not go to the detecting step and does not suggest that this fixed hard drive could be the detector. So the specification is crystal clear that it's the removable storage device that satisfies the purpose of the invention. And there's no disclosure of a fixed hard drive doing that. And the claims are consistent with this. This is not one of those cases where the plain language of the claim says one thing and you need to go to disavow to overcome that, like in Luminara. Here we believe the structure and language of the claims, including the dependent claims, are consistent with the specification. The claim language starts with two steps, detecting a storage device within a storage drive. And then it's a separate step, sensing whether the storage device has the security information on it. So this structure suggests that you're dealing with a removable storage device, that this claim language is taking the word removable and putting it in structural terms. If it's not removable, if it's a fixed hard drive, then that detecting step becomes entirely superfluous. You could just start with sensing whether there's a storage device with security information on it. So I think what the judge did here, it was not adding a limitation, as Ivy contends. It was taking a limitation that was implicit in the structure and language of the claim and making it explicit for the finder of fact, which is what claim construction is all about. We had a scope dispute as to whether you look just at the word storage device or you have to look at the language in the context of the claim, other claim language, and the specification. And that's for the judge to resolve before it gets to the finder of fact, even if that means adding language to make something implicit explicit. And the regent's case that's cited in the brief talks about that. You can take implicit concepts and make them explicit in claim construction. And the dependent claims, even though, as Judge Chedd pointed out, claim differentiation is not the be-all, end-all, and it can be overcome, we believe here there actually is no claim differentiation problem. And I think it's worth walking through the claims in a bit of reverse order to see that clearly. And on page 31 of our red brief, we reproduce claims 46 and 47, which are two of the dependent claims ID sites. And we also reproduce a portion of one of the figures that's relevant here. So claim 46 says, the computer of claim 39, wherein the storage device is a removable storage medium. And then claim 47 also depends from the independent claim 39 and says, wherein the storage device is a data storage diskette. And if you look at that portion of figure one that we reproduced there, it's crystal clear those two dependent claims are talking about the two different types of removable storage devices that are shown in figure one. There's the CD-ROM, which is a naked removable storage medium. And then there's the diskette, which would be claim 47. So now, if you go to claims 28 and 29, which are reproduced on two pages earlier in our brief on page 29, it's similar. But there's one difference that makes it a little bit trickier. But again, the principle holds. Claim 28, which depends from 18, talks about the encrypted data being written to a removable storage medium. And claim 29 talks about it being written to a data storage diskette. The one difference here is that claim 29, for whatever reason, depends from claim 28, as opposed to in 46 and 47, where they're mapped onto those two different embodiments. But again, the differentiation still holds here. Claim 28 narrows 18 by requiring that the data either be written to a removable storage medium, like the CD-ROM, or if it's written to a diskette, it has to be written to the removable medium portion of the diskette, the medium portion, as opposed to, say, writing it to a separate chip on a storage device. And the patent actually does have disclosure where it talks about having a separate chip in the storage device for holding information. So claim 28 narrows claim 18. Where is that, you said? So let's see. We cite that in the brief. Let's see. It talks about column 5, lines 52 to 54, talks about how data or information can be put on a storage device. So claim 28, even if it's directed to the storage diskette as one of the possibilities, is still narrower than claim 18 by requiring that the data be written to a removable storage medium, as opposed to generally to the storage device. So the patentee here changed language when going from 18 to 28 from the storage device to storage medium, which narrows the claim. So the column 5, line 52, et cetera business, is that really talking about the computer storing data on the chip? Isn't it just saying where the computer might find the identifying information? Right. I mean, it's not. Right. So why does that help you? Well, it does show that there is a possibility, at least, of something on a storage device that can hold data other than the medium. And so it at least creates that possibility, which is then foreclosed by claim 28. So it is a bit awkward the way 28 and 29 are written. And honestly, it's quite possible here that the drafter meant for claim 29 to depend from 18, as he did for 46 and 47. But even if this was the intention, it does narrow the claim. 28 narrows 18, and 29 narrows 28. And that is what the Enzo case talks about, is that if the claims are already narrowed, then the claim differentiation argument loses its potency because the claims are already differentiated. So we believe that even if the court looks to claim differentiation here, it actually does not support Ivy's position because the claims are already narrowed. OK, so in addition to the claim language and the specification, there is that straight disavowal language that the district court relied on for her opinion. And I think it's important to break it down a little bit because Ivy tries to make a lot out of the word allows. So the first of the five passages that we cite in our brief says, the present invention allows storage device 151 to be used as an access card by which the user gains access to sensitive data of the organization. So the present invention allows. It doesn't say this embodiment allows. It doesn't say the example allows. It doesn't say what's shown in figure one allows. It says the present invention allows the storage device to be used as an access card. So by the same token, if you have a storage device that cannot act as an access card because it's fixed into the computer system, then it would not allow the storage device to be used as an access card. And it would not be the present invention. It would be something else. So that present invention language, the patentee chose that language and links the removability concept to the words present invention. And there are many other passages we cite too, including the one that starts with according to the invention and then links it directly to removability. So we believe that those disavowal passages, even alone, would be enough to affirm what the district court said. But we believe it's actually consistent with the specification and the other claim language. So if there are no other questions on removability, I can turn to the summary judgment issues. OK. OK. So Mr. Liddell talked about the claims 15 and 18 language that the district court relied on. And we believe that it's very clear that it is not the storage device that's doing encryption, that encrypted data is written to the storage device. So it makes no sense that this undisclosed embodiment of where you would put clear text onto a storage device and then encrypt it later would be something that's covered by the patent. It's not consistent with the claim language or with anything in the specification or the purpose. It doesn't make any sense. And so that alone. Let's break that down a little bit. With claim 18, you have, it seems to me, a much more straightforward language support for your argument than with claim 15. Why does it not make any sense? I think that was the third of your little trio of reasons. Plain and something in the middle.  To mean that the actual writing must be of encrypted data. Full stop without saying where the encryption occurs. Well, because the two words in claim 15, during and to, I think preclude the possibility of putting on the storage device unencrypted data and then encrypting it. It says encrypting digital data during. So if you put plain text onto it, then during a write access, the access, the word access I think is important there too. It's not consistent with the language, particularly read in light of the specification, to have plain text put on a storage device and then later written to a different part of the storage device in an encrypted form. You keep asserting it without at least giving what's registering in my mind as a reason to understand why that did so. So encrypting digital data during a write access. So if you're encrypting it after the write access, after you've already put it on the storage device. The write access is the entire process that starts with, and here maybe it's useful to look at the figure you helpfully included at the top of page 38 of your red brief. The host controller is sending to a Seagate disk drive data with a command. And the command says, write this stuff. And that figure shows that inside the disk drive there's several different processes. Why isn't the whole set of those processes a write access in which the last step, as I think the caption says, the storage meeting is encrypted by the disk drive before being written. That last little box, read, write, and storage control to the storage. Why does it not make sense to have the plain text data sent over with a command, write this, and the first thing the disk drive does is encrypt it. And the second thing it does is, once it has the data encrypted, put it onto a set of magnets or something that will hold it. Okay, well, because it's not limited to writing, the claim doesn't say writing to the magnets. It talks about writing encrypted data to the storage device. So if you've already transferred the plain text over and now you've turned everything over to the storage device, you've already written unencrypted data to the storage device. It's there. You just assert that, but that does not seem to follow as a matter of language. So it would be two different, I mean, there's already a writing step where it's already been sent to the storage device. That itself is writing to this. That's the sending as part of a multi-step process, all of which is the write access, only the last bit of which is the writing. Well, Matt, I understand Your Honor's point, but I think right in light of the specification, it would not make sense to deliver clear text to the storage device and then have the storage device. Let's elaborate on that point. Why would the security purpose, and this gets at the inarticulate question I asked at the end of your colleague's argument, why would it not make sense in light of the security purpose of this for the removable device to be doing the encryption? Well, there isn't any disclosure of that possibility, and none of the storage devices that are disclosed in the patent suggest that that, especially in 1999, if there was that sort of possibility, that it talks about the device that someone can walk away with having the encrypted data on it. And so at some point here, you would have unencrypted data on that storage device, whether it's on the magnets or on something else in the storage device, you've delivered unencrypted data. All right, so I see my time's expiring. I also do want to make sure that the court looks at the other non-infringement argument and make the storage drive issue, because I believe there just was no response to that from IV, that the storage drive itself, or the storage drive, does not meet what the claim that the district court construed to be a storage drive, because it's not a physical device that reads and writes from what they call the storage device. So with that, I'll end. Thank you. Are there any more questions for Mr. Simons? Okay, hearing none, Mr. Liddell, you have your rebuttal time. Are you unmuted? Sorry about that. Thank you, Your Honor. I do want to address a couple of the points raised by my friend's argument. First, the discussion of claims 28 and 29, it was suggested basically that the claims should be read as though one claim dependent from another was in fact claiming two distinct things. That argument was made about claims 46 and 47, which don't depend from one another, but suggested that it also applied to claims 28 and 29. That's really not a very sensible way to read that language. Claim 29 recites an encrypted digital, or excuse me, a data storage diskette as a species of a removable storage medium. It's one kind of removable storage medium. That's the nature of nested dependent claims, and that's consistent with the teaching in the patent that there are many possible kinds of removable storage media. One of them is a data storage diskette. Another kind of removable storage media is a CD-ROM. Yet another would be what's referred to and described in the patent as a super disk. All of those are removable storage media. The point is claim 28 is adding the use of a removable storage media as a further limitation to claim 18, which has, we think, very clear indications that the patentee didn't intend to suggest that claim 28 was somehow different from... Or, excuse me, that claim 18 was somehow already having that limitation in it. Similarly, there was a lot of discussion of passages that the present invention allows something. Those are statements about possible uses, not limitations of the invention. If I had a patent on a steam engine, I might write that the present invention of my steam engine allows one to power a watercraft through the water. That doesn't mean that a steam engine isn't a steam engine if you put it instead in use in a locomotive. It's a possible use. It allows that use. That doesn't mean it's a restrictive statement. That's important when we look at the court's case law about not finding disclaimers where there's not language of manifest exclusion. Obviously, the court's cases are clear that that's a fine balance to be struck, but here we submit that the entirety of the patent and the specification and the claims indicates that that additional restriction was not a disclaimer, that there was not a disavowal of claim scope here. And finally, on the issue about the location of encryption claim elements, I do want to pick up on something. I think Judge Toronto may have commented that the analysis was different for claims 15 and 18, potentially. I think that's correct. We don't believe that this is a proper restriction on either one, but I think it's particularly difficult to make that argument for claim 15, which is reciting merely during a right access. There was no construction either offered or requested of right access to suggest that it's somehow limited in the way counsel tried to argue. I think it was correctly pointed out that that entire process might be a right access and that as long as encryption takes place during that process, that's what the claim requires. We submit that that's true and there's really no dispute that there was evidence in the record before the district court that that's what happens in the accused devices. Under those circumstances, we think that the district court's further restriction was completely inappropriate and that summary judgment was unwarranted. Can I just ask you a procedural question? Are there invalidity challenges in this case or once were? Your Honor, the answer to your question is there were no invalidity challenges raised as a matter of summary judgment. I'm sorry, but if they're in the case, then we don't have a final judgment. That is correct. We don't submit that the court can enter a final... I guess maybe I'm misunderstanding. The court dismissed as moot any remaining issues, if that's your question. Yes, and were there invalidity counterclaims? There were invalidity contentions as a matter of defense. They were somewhat limited because of IPR estoppel here, is my recollection, although I may be misspeaking. If you recall, did they include a written description? I do not believe there was a written description contention here, Your Honor, but to be perfectly candid, I don't remember the precise contours of those. Okay, thanks. Any more questions from the panel? Nope. Hearing none, the case is taken under submission with thanks to both counsel. Thank you, Your Honor. Thank you, Your Honor.